IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **BOBBI JO PICKAR,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00066-O-BP |
| § | |
| **COMMISSIONER OF SOCIAL** § | |
| **SECURITY,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Bobbi Jo Pickar applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding she was not disabled. Pickar appeals. Because the Commissioner used the correct legal standards and substantial evidence supports the Commissioner's decision, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

**I.    BACKGROUND**

Pickar seeks disability benefits under Title II of the SSA, claiming disability status since September 7, 2016. ECF No. 18 at 1. Pickar's DIB application specified several medical conditions that limit her ability to work, including lower back injury, cervical injury, fibromyalgia, depression from personal trauma, muscle spasms, and arthritis. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 12-1 at 442. After the State Agency Medical Consultants ("SAMCs") reviewed her case at the initial level and then again after the reconsideration level, Pickar's representatives filed an

additional 990-pages of medical records. *Id.* at 1112-1287; 1315-2103. These records include doctors' visits and other medical treatment between March 2018 and February 2021. *Id.*

The Commissioner denied Pickar's application initially in March 2018 and upon reconsideration in August 2018. *Id.* at 106-17; 118-31. Pickar challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") (*see id.* at 5-7), who conducted a hearing in Fort Worth, Texas, on June 25, 2019. *Id.* at 34-75. The ALJ issued a partially favorable decision ("Decision I") on August 29, 2019. *Id.* at 134-152. Pickar requested Appeals Council ("AC") review on September 24, 2019. *Id.* at 237. On July 17, 2020, the AC issued a notice of order remanding the case to the ALJ ("Remand Order"). *Id.* at 155-157.

The ALJ conducted a supplemental, telephonic hearing on April 2, 2021, and on May 5, 2021, issued another partially favorable, twenty-four-page decision ("Decision II"). *Id.* at 9-33. After the AC denied Pickar further administrative review (*id.* at 1-4), she filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review."). She claims she is disabled and thus entitled to DIB. ECF No. 1.

## II.    STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

2

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

3

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 16-26. The ALJ found Pickar has: (1) not engaged in substantial gainful activity since September 7, 2016; (2) eight medically determinable, "severe" impairments (degenerative disc disease of the cervical and lumbar spine, status-post arthroscopy of the bilateral shoulders, obesity, diabetes mellitus, fibromyalgia, bunions of the feet, and carpel tunnel syndrome) and two "not severe" impairments (depression and PTSD); and (3) no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 16. The ALJ recounted his review

of Pickar's impairments spanning two pages in his decision, excluding no impairments or combination of impairments from the list. *Id.* at 17-18. He then determined Pickar has the RFC to "perform sedentary work as defined by 20 CFR [§] 404.1567(a) except that she cannot perform crawling or climbing ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She can occasionally reach, handle, finger, and feel with the bilateral upper extremities." *Id.* at 18.

Using this RFC determination and after hearing testimony from a vocational expert ("VE"), the ALJ determined Pickar could not perform PRW. *Id.* at 23-24. The ALJ then addressed other jobs in the national economy that Pickar could perform, per step five. *Id.* at 25-26. He found that before August 22, 2018, Pickar could perform work as a call-out operator. *Id.* The ALJ noted that it is customary to identify three jobs at this fifth step. *Id.* However, consistent with the AC direction, he concluded that evidence of the existence of 44,000 call-out operator jobs alone was enough to represent a significant number of jobs in the national economy. *Id.* Because there were other jobs Pickar could perform, the ALJ found Pickar not disabled prior to August 22, 2018. *Id.* However, the ALJ found that after August 22, 2018 (Pickar's fiftieth birthday), there no longer were any jobs that exist in significant numbers in the national economy that Pickar could perform. *Id.* Finding that Pickar's age, education, work experience, and RFC with additional limitations no longer allowed her to perform the requirements of other jobs, the ALJ found Pickar "disabled" as of August 22, 2018, under Medical-Vocational Rule 201.14. Tr. 26-27.

Pickar urges reversal because the ALJ: (A) did not properly consider all of her severe impairments and the limitations from those impairments because he did not fully and fairly develop the record; and (B) erred because there were not a significant number of jobs Pickar could perform in the region where she lives. ECF No. 18 at 1, 9-20.

### A. The ALJ fully and fairly developed the medical record in his decision.

Step two is where the ALJ begins his impairment and respective limitations analyses. At this step, an ALJ first must decide whether an alleged impairment is an impairment at all. If not, there is no error in failing thereafter to mention or analyze the alleged impairment further. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (per curiam). Next, the ALJ must determine if the impairment is severe, using the standard laid out in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), that "objective medical evidence from an acceptable medical source," 20 C.F.R. § 404.1521, must establish an impairment. "Phrased in the negative, an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (alteration in original) (quoting *Stone*, 752 F.2d at 1101). "This second step requires the claimant to make a *de minimis* showing." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The Court has gradually moved away from an application of *Stone* that looks only to "the use of 'magic words,'" and now considers the ALJs' entire analysis to determine whether they applied the proper severity standard. *Holmes v. Astrue*, No. 3:11-cv-2634-G-BH, 2013 WL 638830, at *9 (N.D. Tex. Jan. 25, 2013), *rec. adopted*, 2013 WL 646510, at *1 (N.D. Tex. Feb. 20, 2013).

Here, the ALJ found that Pickar had several severe impairments, but did not include among them chronic pain syndrome, major depressive disorder, PTSD, and generalized anxiety disorder because the record did not reflect that these ailments affected her ability to work. Tr. 16. Substantial evidence in the record supports the ALJ's findings.

### 1. The ALJ properly noted Pickar's chronic pain.

#### a. Substantial evidence supports the ALJ's consideration of pain before March 2018.

Pickar argues that the ALJ "failed to fully consider [her] chronic pain syndrome and the functional limitations stemming from that diagnosis." ECF No. 18 at 9. Specifically, she asserts that the ALJ erred by not finding her chronic pain syndrome to be a severe impairment. *Id.* Pickar notes the following physicians' reports discussing her chronic pain: (1) March 22, 2018 assessment and diagnoses from Eva Bailey, M.D., at Trinity Pain Medicine Associates, containing chronic pain syndrome (*id.; see* Tr. 1151, 1159); (2) Dr. Bailey's April 5, 2018 assessment with the same pain diagnosis (*id.; see* Tr. 1168, 1172, 1174); and (3) June 8, 2018 visit with Ashley Classen, D.O. at Trinity Pain Management for her chronic pain syndrome (*id.; see* Tr. 1196). ECF No. 18 at 11-12. Pickar cites several other medical reports that are not relevant because they are dated after the ALJ found her to be disabled. *See* ECF No. 18 at 12-13. Pickar argues that the ALJ did not properly incorporate her limitations into her RFC because he did not find her chronic pain to be a severe impairment. *Id.* at 11.

The Commissioner replies that the ALJ properly considered all of Pickar's impairments and did not err in assessing her RFC. ECF No. 19 at 9-11. The Commissioner notes that the ALJ reviewed the records and acknowledged each of the medical records mentioned above along with many others. *Id*. The ALJ referenced each of the records in detail in his decision and devoted six pages to reviewing Pickar's pain and treatment history. Tr. 18-23. The ALJ recognized that Pickar had degenerative disc disease, bunions, and carpel tunnel syndrome that all can account for her pain. *Id.*

The existence of pain is not an automatic ground for obtaining disability benefits without more in the record. *See Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985). Pain constitutes a

disabling condition "when it is constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001). Objective medical evidence must corroborate subjective complaints of pain. *Id.* at 522. "Pain may constitute a non-exertional impairment that can limit the jobs a claimant would otherwise be able to perform". *Carnahan v. Apfel,* 247 F.3d 241, 2001 WL 43543, at *3 (5th Cir. 2001); *Selders,* 914 F.2d at 618. An ALJ may discount such complaints when the alleged symptoms are not consistent with the objective medical evidence. *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992); *Dunbar v. Barnhart,* 330 F.3d 670, 672 (5th Cir. 2003).

In identifying Pickar's severe impairments, the ALJ acknowledged her pain and that her impairments could "reasonably be expected to cause the alleged symptoms; however, [Pickar's] statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully support by medical evidence." *Id.* at 19. The ALJ confirmed "mild to moderate degenerative changes… in the spine" and "areas with weakness and a decreased range of motion." *Id.* at 21. He also acknowledged "a partially torn rotator cuff in her left shoulder that was successfully resolved with surgery." *Id.* at 19. The ALJ analyzed all of Pickar's alleged impairments and their impact on her daily activities and ability to work. *Id.* He reviewed the evidence in the record and assessed Pickar's RFC. *Id.* at 18. Citing to 20 C.F.R. §§ 404.1529, 404.1520c, 404. 1567a, and Social Security Ruling 16-3p, the ALJ found that Pickar had the RFC to perform sedentary work. Additionally, he noted postural and manipulative limitations. *Id.* at 18-19. Substantial evidence in the record, including medical opinions, supports the ALJ's conclusions regarding Pickar's pain and its effect on her ability to work.

### b. Substantial evidence supports the ALJ's consideration of pain after March 2018.

Pickar next asserts that the ALJ should have found her chronic pain to be severe beginning around March 2018, based on the 990 pages of medical records submitted after the SAMCs completed their review. ECF No. 18 at 11-12. The Commissioner responds that chronic pain by itself does not need to be considered a severe impairment if other conditions are the source of the reported pain. ECF No. 19 at 9-10. She also argues that even if the ALJ should have included Pickar's chronic pain as a separate and discrete severe impairment, the ALJ considered her allegations of pain throughout his evaluation, and substantial evidence supported his determination that it was not disabling. *Id.*

The ALJ's decision reflects that he was aware of all of Pickar's physical impairments and acknowledged that he had a duty to consider severe and non-severe impairments, individually and in combination. Tr. 16. He reviewed and noted the multiple causes of her pain as well as her positive response to treatment and progress associated with her pain. *Id.* This assessment included consideration of the additional 990 pages of records. *Id.* The ALJ noted in March 2018 that Pickar had an initial visit with a doctor complaining of lower back pain. Tr. 21. In May 2018, she received an injection that "provided 90% pain relief for two weeks." Tr. 21. In June 2018, she had a nerve root block in her spine that "provided 100% pain relief for ten days." Tr. 21.

After considering the entirety of the record, including the more recent 990 pages of medical records, the ALJ recognized that Pickar "retained slightly diminished strength, a painful and limited range of motion, and reduced reflexes." Tr. 23. "[S]he ha[d] shown a somewhat good response to epidural steroid injection treatment, resulting in a wider residual functional capacity, and … looking at the claimant's reported activities of daily living, include a wide range of activities that show few restrictions." Tr. 23. He concluded that Pickar's limitations reflected in the objective

medical record did not support her allegations that she was completely unable to work. Tr. 23. He concluded that she was able to do sedentary work with manipulative limitations. *Id.* at 18.

The Court finds that the ALJ undertook the appropriate analysis of the effects of Pickar's impairments beginning March 2018, and substantial evidence supports his analysis. The ALJ properly exercised his responsibility as fact finder to weigh the evidence and incorporate limitations in his RFC assessment that the record supported. *Audler,* 501 F.3d at 447. Therefore, the Court concludes that the ALJ fully and fairly developed the record regarding Pickar's chronic pain, and reversal is not required on this issue.

### 2. The ALJ correctly found that Pickar's depression, PTSD, and chronic pain were not severe mental impairments.

Pickar next contends that the ALJ erred in not finding her depression, PTSD, and chronic pain syndrome to be severe impairments. ECF No. 18 at 10. She also argues that the strong relationship between her chronic pain and her mental health required the ALJ to find her pain to be a severe mental impairment. *Id.* at 13-14. She argues that these omissions resulted in legal error because the ALJ did not account for them in her RFC. *Id.* The Commissioner responds that the ALJ did not err in finding Pickar's depression and PTSD were not severe impairments and that Pickar did not meet her burden regarding any of her alleged mental impairments. ECF No. 19 at 3-4. She argues that the ALJ reviewed the evidence and relevant regulations and determined Pickar did not establish any severe mental impairments because she experienced no more than "mild" mental limitations in the functional areas assessed in the Psychiatric Review Technique ("PRT"). *Id.*

When determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments of which he is aware, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). An impairment can be considered as not severe only if it is a slight

10

abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. The Court's review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Hollis*, 837 F.2d 1378; *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704.

The ALJ followed the appropriate technique in this case determining that Pickar's mental impairments were not severe, pursuant to 20 C.F.R. § 404.1520; Tr. 16. He assessed the four functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Garcia v. Berryhill*, 880 F.3d 700, 705 (5th Cir. 2018). Specifically, he found that Pickar suffered from no more than mild limitations in any of the four functional areas set forth in the regulations. These findings were consistent with the SAMCs' findings. *Id;* Tr. 125. The ALJ then considered relevant evidence that might support a finding alongside evidence that opposes such a finding. He reviewed the SAMCs' respective opinions at both the initial and reconsideration stages. *Id.* at 22.

The ALJ also reviewed various doctor visit records from the relevant time period where her mental health was assessed. *Id.* In April 2015 and again in October 2017, Dallas Veterans Administration Medical Center ("VA") reported "occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by medication." ECF No. 19 at 5; *see* Tr. 705, 989. Pickar denied PTSD or other severe anxiety order in May 2019, and a progress report from the VA medical center in July 2019 indicates a negative screening for PTSD. ECF No.

19 at 6; Tr. 1568-69, 1385. Other VA records mentioned, among other notes, that Pickar "had good insight and good judgment with normal mood and affect, as well as normal recent and remote memory." ECF No. 19 at 6*;* Tr. 1868, 1878, 1884, 1899, 1904, 1912, 1921, 1931, 2020, 2033, 2039. Finally, treatment notes from Trinity Pain Medicine Associates from April 5, 2018 – September 26, 2019, including eight visits in total, all note Pickar was "negative for a mental health history." ECF No. 19 at 6*;* Tr. 1126, 1162, 1187, 1189, 1198, 1958, 1965, 1971.

The ALJ also observed about Pickar's mental impairments that they "appear at one point or another in the medical evidence of record," usually in the context of emergency department or other office visits. ECF No. 19 at 4; *see* Tr. 16. Thus, in the absence of ongoing, rather than episodic treatment requirements, the ALJ concluded that "there is no evidence that any of these conditions have either met the durational requirements of this program, or that they create any specific functional limitations regarding [Pickar's] ability to perform work related activities; thus, they are considered not severe." Tr. 16-17.

The ALJ evaluates a claimant's subjective complaints using a two-part process. *Salazar v. Chater*, 74 F.3d 1236, 1995 WL 783347, at *1 (5th Cir. Nov. 27, 1995) (citing 20 C.F.R. § 404.1529). First, "medical signs or laboratory findings" must show the claimant has a "medically determinable impairment that could reasonably be expected to produce [her] symptoms." 20 C.F.R. § 404.1529(b). Second, the ALJ must "evaluate the intensity and persistence of [her] symptoms so that [he] can determine how [her] symptoms limit [her] capacity for work." *Id.* § 404.1529(c)(1).

Here, the ALJ found the first part satisfied, but during the second part found an inconsistency between Pickar's subjective complaints regarding her chronic pain, and the record as a whole. Tr. 16-23. The only evidence in the record that might support finding chronic pain a

severe mental impairment is Pickar's subjective testimony during both hearings. Tr. 60, 92. However, there is insufficient documentation to support her contention. There is no evidence of functional restriction resulting from a mental impairment in the record caused by her pain. ECF No. 19 at 3-7. In fact, many of these reports refer to her negative mental history, normal mood and affect, being alert, and fully oriented. *Id;* Tr. 110, 124-26, 589, 1797, 1385, 1568-69. Moreover, the SAMCs reported "[Pickar's] activities of daily living indicated no issues with handling stress/changes and reflected no issues getting along with others or completing tasks." Tr. 110. Therefore, Pickar's assertions that her depression, PTSD, and chronic pain should be considered severe mental impairments lack support in the record, and reversal is not required on this issue.

### 3. Pickar's fibromyalgia and carpel tunnel syndrome were diagnosed after she was found to be disabled, and no harm occurred.

Pickar next argues that the ALJ erred in finding that her severe impairments of fibromyalgia and carpel tunnel syndrome could cause more than a minimal effect on her ability to perform work-related activities. ECF No. 18 at 21. She challenges the ALJ's findings based on her belief that no medical source reviewed the relevant portion of the 990 pages of additional medical records addressing these impairments. *Id.* Pickar argues that the ALJ either ignored the additional pages medical records or erroneously played doctor in reaching his conclusion. *Id.* at 19. She asserts that this error prejudiced her outcome because had the ALJ properly included these limitations in his decision, Pickar would not have been able to perform the job of a call-out operator. *Id.* The Commissioner argues that this new evidence relates to a time period after August 2018 when she was already found to be disabled. ECF No. 19 at 11.

The Commissioner is correct that medical records dated after August 2018 regarding Pickar's fibromyalgia and carpel tunnel syndrome diagnoses are irrelevant to the question whether

Pickar was disabled prior to that time. Thus, there was no harm or grounds for reversal on this point.

### 4. Substantial evidence in the record supports the ALJ's finding that Pickar's degenerative disc disease was severe.

Pickar argues next that the ALJ erred in finding that her degenerative disc disease was severe without adequate medical opinion support. ECF No. 18 at 17-19. Pickar again points to the 990 pages of medical records to support her argument, suggesting that she received a first diagnosis of degenerative disc disease on March 26, 2018. *Id.* at 17-18. The Commissioner contends that substantial evidence supports the ALJ's assessment and conclusion that Pickar's degenerative disc disease caused non-disabling limitations that restricted her to a reduced range of sedentary work. ECF No. 19 at 12.

The Court need not referee the parties' conflicting evidentiary arguments. Judicial review is limited to determining whether the Commissioner applied the correct legal standard and whether substantial evidence exists in the record. *Leggett,* 67 F. 3d at 564. It is not for the courts to "reweigh the evidence in the record, try the issues *de novo*, or substitute [our] judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown*, 192 F.3d at 496). Here, The ALJ reviewed the record, including the SAMCs report, and concurred with Dr. Spoor that Pickar's degenerative disc disease was a severe impairment. Tr. 22; 110. The ALJ also reviewed Dr. Spoor's discussion of any limitations this impairment would have on Pickar's ability to work. Tr. 112-15. The ALJ interpreted and discussed these medical records in his decision and assessed Pickar's RFC based on all of the relevant evidence in the record. ECF No. 19 at 12. To second guess or question any individual doctor's findings or to weigh one record over another, is precisely the kind of judgment

substitution that the Court will not make. *See Selders,* 914 F.2d at 617. Substantial evidence in the record supports the ALJ's decision, and reversal is not required on this issue.

> **B. There were a significant number of jobs in the national economy that Pickar could perform before she turned fifty.**

The ALJ relied on VE testimony to conclude that Pickar could perform a significant number of jobs, referencing a call-out operator position that had 44,000 available jobs in the national economy. Tr. 25, 101; *See Gaspard v. Soc. Sec. Admin. Com'r,* 609 F. Supp. 2d 607 (E.D. Tex. 2009) ("The Commissioner's burden at Step 5... is satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform.") (citing *Evans v. Chater*, 55 F.3d 530, 532-33 (10th Cir. 1995)). The number of such jobs in the region where Pickar lives is 2,677. Tr. 102.

Pickar argues that 44,000 jobs are not "significant" when the regional number is only 2,600 jobs. *See* ECF No. 18 at 19-20. She notes that Social Security Regulations provide that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy". 20 C.F.R. § 404.1566(b); *Id.* Pickar contends 2,677 jobs in Oklahoma, Arkansas, Texas, and Missouri, are "nothing more than isolated jobs and do not represent a significant number of jobs she can perform." ECF No. 18 at 20. Pickar offers no case authority supporting her argument. *See* ECF No. 18 at 19-20.

The Commissioner responds that:

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

15

42 U.S.C. § 423(d)(2)(A); *see* ECF No. 19 at 14.

Neither the Fifth Circuit nor this Court has endorsed a bright-line rule for what constitutes a "significant" number of jobs. *See, e.g.*, *Jackson v. Berryhill*, No. 3:16-cv-2957-G-BK, 2017 WL 4457539, at *3 (N.D. Tex. Sept. 11, 2017), *rec. adopted*, 2017 WL 4410812 (N.D. Tex. Oct. 3, 2017) ("The Court of Appeals for the Fifth Circuit has not, in a published opinion, determined what constitutes a 'significant number' of jobs."). Instead, the Fifth Circuit has indicated the determination should be based on "common sense." *Id.*

In *Lirley v. Barnhart*, the court held that 50,000 was a sufficient number of jobs in the national economy to be significant, but there was no indication that 50,000 was the minimum needed to be significant. 124 F. App'x 283, 284-85 (5th Cir. 2005). This Court and others elsewhere have found numbers far lower to be "significant." *See Mercer v. Halter*, No. 00-cv-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (finding 500 jobs in Texas and 5,000 nationwide significant); *Pitts v. Saul,* No. 3:19-CV-1539-BH, 2020 WL 6566412, at *7 (N.D. Tex. Nov. 9, 2020) (finding significant: semi-conductor bonder, with approximately 22,000 jobs nationally and 1,200 jobs in Texas; addresser, with approximately 8,200 jobs nationally and 181 jobs in Texas; and food and beverage order clerk, with approximately 20,000 jobs nationally and 1,000 jobs in Texas); *Gaspard,* 609 F. Supp. 2d at 619 (various appellate courts have found 500, 650-900, and 1,400 jobs in a state to be sufficient to constitute a significant number of jobs); *Johnson v. Chater*, 108 F.3d 178, 180 & n.3 (8th Cir. 1988) (finding 200 local and 10,000 jobs nationally significant).

Because the ALJ relied on the VE's testimony that jobs exist in significant numbers in the national economy that Pickar can perform, substantial evidence supports his finding. *See* 20 C.F.R. § 416.966(a)-(e) (noting ALJs may rely on VE testimony when making this determination).

Applying the "common-sense" approach endorsed by the Fifth Circuit and noting the VE's testimony, the undersigned sees no error that would warrant reconsideration of the ALJ's employability findings.

Further, whether the job number is sufficient is a moot point. An attorney represented Pickar at the administrative hearing, and the attorney had ample opportunity to question the VE regarding the validity of the job numbers. Tr. 101-103. If Pickar wanted to question the basis of the VE's job numbers, her attorney should have raised the issue at the hearing. *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005). Without such an objection, the ALJ was within his discretion to rely solely on the uncontested VE testimony. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (absent objection at the hearing, a VE's testimony may qualify as substantial evidence even when unaccompanied by supporting data). Therefore, because Pickar did not object to the VE's testimony at the hearing, the ALJ properly relied on the VE's testimony. The VE's testimony provided evidence of substantial jobs in the national economy, and reversal is not proper on this point.

## IV.   CONCLUSION

Because the ALJ fully and fairly developed the record and substantial evidence supports his decision, and because 44,000 jobs in the national economy is a significant number of jobs, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must

identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      **SIGNED** on October 27, 2022.

                                                    Hal R. Ray, Jr.
                                                    UNITED STATES MAGISTRATE JUDGE